IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IVAN DAVILA, #M55646, <br><br>   Plaintiff, <br><br> v. <br><br> DR. JOHN DOE DENTIST, <br> DR. JOHN DOE M.D., <br> LT. DUDEK, <br> SGT. ENGSTROM, <br> C/O J. CAVINS, <br> JOHN DOE OFFICER 1, <br> JOHN DOE OFFICER 2, and <br> JOHN DOE OFFICER 3, <br><br>   Defendants. | Case No. 24-cv-01740-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Ivan Davila, an inmate of the Illinois Department of Corrections (IDOC) who is currently incarcerated at Pinckneyville Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

**PRELIMINARY MATTER – FILING FEE**

Plaintiff has not paid the $405 filing fee, nor has he sought leave to proceed *in forma pauperis* (IFP) in this case as he is required. *See* 28 U.S.C. § 1914(a). As a matter of course, the Clerk of Court has sent notice that Plaintiff has 30 days to either pay or move for IFP status. (Doc. 3). Regardless, because Plaintiff seeks immediate emergency injunctive relief, the Court will take up the case now. *See Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680 (7th Cir. 2012). However, Plaintiff must still meet his obligations with regard to the filing fee. Plaintiff must either pay the $405 filing fee or submit a motion for leave to proceed IFP in this action, together with his inmate trust fund account statement for the six-month period prior to the filing date of this case no later than August 19, 2024. **If Plaintiff fails to either pay or submit his IFP motion, this action shall be subject to dismissal for failure to comply with an order of the Court.** *See* FED. R. CIV. P 41(b).

**THE COMPLAINT**

Plaintiff alleges that on July 8, 2024, he was sent to an outside facility to have his wisdom tooth surgically removed. (Doc. 1, p. 2). Following the procedure, Plaintiff returned to Pinckneyville Correctional Center with "orders to have a liquid diet, wound flushing, medication, and gauze." Plaintiff received gauze and medication, but the liquid diet was not ordered. (*Id.*).

The following day, on July 9, 2024, Plaintiff noticed puss and "green stuff coming out of the surgical site." (Doc. 1, p. 2). Plaintiff sent a note requesting to be seen by the housing unit nurse, but the nurse refused to see him. He also complained to nursing staff about experiencing pain, and his complaints were ignored. Plaintiff was not eating because he had not been provided a liquid diet, and he could not chew solid foods. He suffered from nausea, shaking, profuse sweating, and dizziness. On July 11, 2024, Plaintiff was "fading in and out of consciousness" and

was taken to the health care unit. He was never evaluated by a doctor, however, and taken back to his housing unit without receiving treatment. (*Id.*).

On July 12, 2024, Plaintiff continued to suffer from the infection in his mouth. (Doc. 1, p. 3). In addition to the pain, Plaintiff experienced dizziness, nauseousness, vomiting, and sweating from not eating. By this time, Plaintiff had been ordered a liquid diet, but at breakfast that morning, Plaintiff was not given a liquid meal. Plaintiff informed Correctional Officer Cavins about not having his liquid diet, but Cavins ignored Plaintiff's complaint. (*Id.*).

Around 4:15 p.m., Plaintiff notified Sergeant Engstrom that he was having a medical emergency because he had just lost consciousness and continued to vomit. Engstrom walked away, and Plaintiff again "passed out." His cellmate called for help, and it took forty-five minutes to receive medical assistance. When Engstrom and Correctional Officers John Does 1, 2, and 3 came to take Plaintiff to the health care unit he was unconscious. Plaintiff asserts that his cellmate informed him that Defendants grabbed him by the arms and dragged him from his cell, through his vomit, and threw him aggressively on the stretcher to take him to the health care unit. (*Id.*).

At the health care unit, the doctor refused to see Plaintiff. Lieutenant Dudek came to escort Plaintiff back to his cell. (Doc. 1, p. 3). Plaintiff asserted that he still needed medical treatment. Dudek screamed at Plaintiff and stated that if he, Plaintiff, did not comply with orders and leave the health care unit then Dudek would spray him with mace and drag him to segregation. Plaintiff complied with the orders to leave the health care unit. While Dudek pushed Plaintiff in a wheelchair back to his cell, Plaintiff began throwing up on himself and "passed out." Plaintiff was informed that Correctional Officers John Does 1, 2, and 3 and Dudek, roughly dragged Plaintiff by his arms up the stairs and threw him on the floor of his cell in a pile of vomit. (*Id.*).

Around 7:45 p.m., Plaintiff was again taken to the health care unit. (Doc. 1, p. 3). Dr. John

Doe M.D. advised that Plaintiff should be placed on twenty-four-hour medical observation. Plaintiff was not placed in the infirmary for observation, but instead, he was assigned to a filthy crisis watch cell in the segregation wing. At no time did any medical staff come and check on him. (*Id.*).

On or around July 12, 2024, Plaintiff was seen by Dr. John Doe Dentist. (Doc. 1, p. 3). Dr. John Doe Dentist told Plaintiff that Plaintiff needed an emergency referral because "he could see Plaintiff's jawbone through the surgical incision." (*Id.*). But then, Dr. John Doe Dentist told Plaintiff he could treat Plaintiff on sight instead. (*Id.* at p. 4).

Plaintiff was returned to his normal housing unit on July 14, 2024. (Doc. 1, p. 4). He still has not received care for his infection. Plaintiff is experiencing the same symptoms of pain and vomiting and continues to "pass out." He is only given chicken base broth to eat with no nutritional supplements. (*Id.*). The day shift sergeant in Plaintiff's wing, Sergeant Thomas Smith, has recognized the deficient care Plaintiff is receiving and commented that "the medical staff are going to kill him." (*Id.*).

## DISCUSSION

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following counts:

**Count 1:**   Eighth Amendment claim against Defendants for deliberate indifference to his serious dental and medical needs.

**Count 2:**   Eighth Amendment claim against John Doe 1, John Doe 2, John Doe 3, Engstrom, and Dudek for the use of excessive force when transporting Plaintiff, who was unconscious, to the health care unit and returned him to his cell.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the**

**Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

### Count 1

At this stage, Plaintiff has provided sufficient factual details to state a deliberate indifference claim against Engstrom, John Doe Officers 1, 2, and 3, Dudek, Cavins, and Dentist John Doe for failing to provide adequate medical and dental treatment to Plaintiff.

Count 1, however, will be dismissed against Dr. John Doe M.D. Plaintiff states that when he saw Dr. John Doe M.D. on the evening of July 12, 2024, Dr. John Doe M.D. ordered that Plaintiff be placed on medical observation. (Doc. 1, p. 3). Although Plaintiff was placed in an unsanitary crisis watch cell and did not receive further treatment, there are no allegations that Dr. John Doe M.D. was aware of these circumstances or had any further interactions with Plaintiff. Thus, the Court cannot plausibly infer from the facts alleged that Dr. John Doe M.D. acted with deliberate indifference towards Plaintiff's medical needs.

### Count 2

The intentional use of excessive force of correctional officers against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment, and is actionable under Section 1983. *See Wilkins v. Gaddy,* 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). At this early stage, Plaintiff has sufficiently pled an excessive force claim against Engstrom, John Does 1, 2, and 3, and Dudek for their allegedly rough treatment of Plaintiff when taking him to the health care unit and returning him back to his cell. Count 2 will therefore proceed.

---

[1] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

**UNIDENTIFIED DEFENDANTS**

Plaintiff will be allowed to proceed with Count 1 against John Does 1-3 and Dr. John Doe Dentist and with Count 2 against John Does 1-3, and he will have the opportunity to engage in limited discovery to ascertain the identity of these individuals. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). John Barwick, the warden of Pinckneyville Correctional Center, will be added as a defendant to this case in his official capacity only for purposes of identifying the unidentified defendants and implementing any injunctive relief that may be ordered. Once identified, Plaintiff shall file a motion to substitute the newly identified defendant in place of the generic designations in the case caption and throughout the Complaint.

**MOTION FOR EMERGENCY INJUNCTION TEMPORARY RESTRAINING ORDER**

Plaintiff seeks emergency injunctive relief ordering that he be seen by an "oral surgeon or the equivalent of to be properly treated." (Doc. 1, p. 4; Doc. 2). He states that he fears that without a Court order the infection in his mouth will not be treated, and he will go into septic shock or even die.

To obtain preliminary injunctive relief, whether through a temporary restraining order (TRO) or preliminary injunction, Plaintiff must demonstrate that (1) his underlying case has some likelihood of success; (2) no adequate remedy at law exists; and (3) he will suffer irreparable harm without the relief. *Merritte v. Kessel*, 561 F. App'x 546, 548 (7th Cir. 2014) (citations omitted).

Without expressing any opinion on the merits of any of Plaintiff's other claims for relief, the Court concludes that a TRO should not be issued in this matter. The Prison Litigation Reform Act requires that any grant of prospective relief, including TROs, "shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs" and cannot issue "unless the court finds that such relief is narrowly drawn, extends no further than

necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626. Federal courts must exercise equitable restraint when asked to take over the administration of a prison, something that is best left to correctional officials and their staff. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995); *Rizzo v. Goode*, 423 U.S. 362, 379 (1976). Plaintiff was seen by a dentist on July 12, 2024 (four days before he signed and dated the Complaint), he is being fed chicken broth, and provided his medication. (Doc. 1, p. 4). Although he continues to experience severe symptoms, and it appears that his oral infection has not been properly treated, he has not demonstrated that "irreparable injury, loss, or damage will result…before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A). Accordingly, the Court will not order Defendants to have Plaintiff seen by an oral surgeon without allowing Defendants to first respond to the motion. The request for a TRO is **DENIED.**

Plaintiff's request for a preliminary injunction, however, will remain pending until Defendants have been served. Defendants are directed respond to the request for a preliminary injunction within **7 days** of service of the pleadings in this case, at which point the Court will determine the need for a hearing on the motion requesting a preliminary injunction.

## DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** shall proceed against John Doe 1, John Doe 2, John Doe 3, Dr. John Doe Dentist, Dudek, Engstrom, and Cavins, and is **DISMISSED without prejudice** as to Dr. John Doe M.D. **COUNT 2** shall proceed against John Doe, 1, John Doe 2, John Doe 3, Engstrom and Dudek. The Clerk of Court **SHALL TERMINATE** Dr. John Doe M.D. as a party on the docket, as there are no surviving claims against this individual. The Clerk of Court is **DIRECTED** to **ADD**

Warden John Barwick as a defendant in his official capacity only.

Because Plaintiff claims involve his dental and medical care, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court shall prepare for Barwick (official capacity only), Engstrom, Cavins, Dudek, and Dr. John Doe Dentist and John Does 1-3 (once identified) the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint and this Memorandum and Order to the defendants' place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his or her last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 24, 2024**

      *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.