IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IVAN DAVILA,<br><br>  Plaintiff,<br><br>v.<br><br>JOHN DOE 1, *et al.*,<br><br>  Defendants. | Case No. 24-cv-01740-SPM |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on various motions filed by Plaintiff Ivan Davila. For the following reasons, the pending motions are denied. (Doc. 2, 10, 26, 33, 34).

### I.    Motion for Preliminary Injunction (Doc. 2)

Plaintiff Ivan Davila, an inmate of the Illinois Department of Corrections ("IDOC") commenced this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. Plaintiff alleges that on July 8, 2024, he was sent to an outside facility to have a wisdom tooth surgically removed. (Doc. 1). Upon his return to Pinckneyville Correctional Center ("Pinckneyville"), he has not been provided proper follow-up care and nutrition, resulting in dizziness, nausea, vomiting, and loss of consciousness. Additionally, the area where the tooth was removed has become infected and continues to go untreated. Plaintiff is proceeding on the following claims:

> **Count 1:**   Eighth Amendment claim against John Doe 1, John Doe 2, John Doe 3, Chapman,[1] Dudek, Engstrom, and Cavins for deliberate indifference to his serious dental and medical needs.

---

[1] Dr. John Doe Dentist/John Doe 4 has been identified by Defendants as Dr. Nathan Chapman. (Doc. 27, p. 1). The Clerk of Court is **DIRECTED** to **SUBSTITUTE** Dr. Nathan Chapman for Dr. John Doe Dentist/John Doe 4 on the docket.

> **Count 2:** Eighth Amendment claim against John Doe 1, John Doe 2, John Doe 3, Engstrom, and Dudek for the use of excessive force when transporting Plaintiff, who was unconscious, to the health care unit and returning him to his cell.

(Doc. 5).

Along with the Complaint, Plaintiff filed a motion titled, "Motion for Emergency Injunction Temporary Restraining Order." In the motion, Plaintiff alleges that the infection in his mouth has progressed, and he has "an open surgical wound in which his jawbone is sticking out of it." (Doc. 2, p. 1). He is in extreme pain and cannot eat or sleep and continues to vomit and "pass out." Plaintiff asserts that he still has not been properly treated by medical staff and fears he will suffer irreparable harm or even death if the infection continues to go untreated. Plaintiff asks the Court to order Defendants to have him examined by an oral surgeon. (*Id.*). Defendants have filed responses in opposition to the motion. (Doc. 27, 28).

To obtain a preliminary injunction, a plaintiff must demonstrate that (1) he will suffer irreparable harm if he does not obtain the requested relief; (2) traditional legal remedies are inadequate; and (3) he has some likelihood of prevailing on the merits of his claim. *See Mays v. Dart*, 974 F.3d 810 (7th Cir. 2020) (citing *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020)). Because preliminary injunctive relief is "an extraordinary and drastic remedy," it should not be granted "unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Additionally, in the context of prisoner litigation, the scope of the Court's authority to enter an injunction is circumscribed by the Prison Litigation Reform Act ("PLRA"). *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); *see also Westefer*, 682 F.3d at 683.

The Court finds that Plaintiff is not entitled to a preliminary injunction at this time, as he has not demonstrated he will suffer irreparable harm absent a Court ordered injunction. The medical records indicate that following the tooth extraction Plaintiff developed a dry socket and experienced nausea, pain, and vomiting. (Doc. 27-1, p. 1; Doc. 27-2, p. 34). His condition became severe enough that he was admitted to the health care unit on July 13, 2024, placed under 23-hour observation, and given IV fluids. (Doc. 27-2, p. 35). He was released from the health care unit but was again placed under 23-hour observation on July 15 following a "code 3" and complaints of stiff arms due to "dental problems." (*Id.* at p. 39). The record also affirms Plaintiff's claims that his liquid diet was delayed and not issued until July 12, 2024, four days after his surgery. (*Id.* at p. 34; Doc. 27-3, p. 9).

Although Plaintiff's condition initially deteriorated following the surgery, Plaintiff continues to be seen by medical providers at Pinckneyville, and his oral health has shown signs of significant improvement. According to Plaintiff's medical records, after the tooth extraction, Plaintiff was timely prescribed antibiotics and pain medicine, and he was regularly examined and treated by Defendant Dr. Chapman, a dentist at Pinckneyville, and other medical staff. (*See* Doc. 1, p. 3; Doc. 27-2, p. 31, 41, 47, 53-68; Doc. 27-3, p. 4- 6).[2] At his latest appointment on August 8, 2024, Dr. Dr. Chapman observed that the open area in Plaintiff's mouth had closed and was "filled in," Plaintiff's range of motion was normal, and the results from an x-ray taken on July 19 showed no fractures or abnormalities. He noted that Plaintiff's tooth #18 had caries, which is the cause of sensitivity in the area, and that he would place Plaintiff on the appointment list to further assess tooth #18 at a later date. Dr. Chapman recorded that Plaintiff ate soft food well and extended the order for a soft food diet until August 29. He informed Plaintiff to write if Plaintiff wanted to

---

[2] Plaintiff was seen by Dr. Chapman on July 11, July 15, July 17, July 18, July 22, July 24, and August 8, 2024. (Doc. 27-3, p. 4-8).

continue the soft food diet past that date. (*Id.*).

Plaintiff has not refuted Defendants' assertions that he "seems to have achieved full healing in his troubled dental area as of August 8," and there is no evidence that further treatment by an oral surgeon is medically necessary. (Doc. 27, p. 10; Doc. 28, p. 8). Because Plaintiff has not made a clear showing of immediate and irreparable injury that will result without a preliminary injunction, the motion is **DENIED**. *See Wright v. Miller*, 561 F. App'x 551, 554 (7th Cir. 2014).

## II.     Motion of Notice (Doc. 10) and Motion for Recruitment of Counsel (Doc. 34)

Plaintiff has filed a motion titled "Motion of Notice." In the motion, Plaintiff states that he does not want his claims against Dr. John Doe M.D. dismissed. (Doc. 10, p. 3). He contends that the decision by Dr. John Doe M.D. to medically clear him and have him removed from observation and returned to his cell caused further injury to his health. Plaintiff asserts that there are labs, video footage, affidavits, and medical records proving that he should not have been medically cleared, and he asks the Court to help him obtain this evidence. (*Id.* at p. 3-4). Plaintiff also seeks assistance obtaining a lawyer to represent him in this case. (*Id.* at p. 4).

Based on his assertions and the relief requested, the Court construes the motion as a motion seeking reconsideration of the merit review order, the recruitment of counsel, and to compel the production of discovery. For the following reasons, the motion is **DENIED.**

Under Rule 54(b) of the Federal Rules of Civil Procedure, the Court may revise any order adjudicating fewer than all the claims at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. Motions to reconsider an order under Rule 54(b) are judged largely by the same standards as motions to alter or amend a judgment under Rule 59(e), "to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (citation omitted). "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or

arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). *See also Ahmed v. Ashcroft,* 388 F. 3d 247, 249 (7th Cir. 2004).

Plaintiff has not demonstrated that the Court committed a manifest error of law or fact warranting consideration. In the motion, he expresses his disagreement with the dismissal of Dr. John Doe M.D. and asserts new allegations regarding the involvement of Dr. John Doe M.D. in his health care. He does not, however, point to any facts alleged in the Complaint showing that he adequately pled claims against Dr. John Doe M.D. The Court will not reconsider the merit review order based on additional factual assertions outside of the operative complaint. Additionally, Plaintiff cannot use a motion to reconsider to add to or amend the Complaint. For these reasons, his request to reconsider the merit review order is denied.

Plaintiff's request for the Court's assistance in retrieving evidence is also denied. The request to compel discovery is premature. Once Defendants have filed responsive pleadings to the Complaint, the Court will enter a scheduling order containing important information on deadlines, discovery, gathering evidence, and other procedures.

Finally, the Court denies Plaintiff's request for court recruited counsel contained in the Motion of Notice and denies the Motion for Recruitment of Counsel. (Doc. 10, 34). Pursuant to 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel." When faced with a motion for recruitment of counsel the Court applies a two-part test: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

In an attempt to recruit counsel on his own, Plaintiff states that he asked his court recruited lawyer, who is currently representing him in his other civil case being litigated in the Northern

District, to represent him in this matter. (Doc. 10, p. 4-5). The lawyer declined. On August 19, 2024, Plaintiff mailed letters to four firms but has not yet received responses. (Doc. 34, p. 1). Plaintiff argues that he is unable to litigate this case pro se because he suffers from learning and mental health disabilities, and he is incapable of comprehending what is going on in this case.

Plaintiff's recent attempts to recruit counsel to represent him in this case is not sufficient to meet his threshold burden of making a "reasonable attempt" to secure counsel. He simply lists the names of law firms he has contacted without any additional information such as addresses for these firms, copies of his payment voucher for the postage, or declination letters. The Court also finds that Plaintiff is able to litigate pro se at this early stage in the case. Despite his disabilities, Plaintiff continues to receive assistance from other inmates and file documents with the Court. Should the case progress and if Plaintiff has significant difficulty, he may refile his motion. If Plaintiff chooses to move for recruitment of counsel at a later date, the Court directs him to include in the addresses of at least three attorneys he has contacted, and if available, attach the letters from the attorneys who declined representation.

### III.    Motion for Evidence/Preserve Video Footage (Doc. 26)

Plaintiff is requesting video footage from July 12 and 13, 2024, in order to prove his claim of excessive force and to demonstrate that Dr. John Doe M.D. should not have cleared him to be released from observation.

The motion is denied. As discussed above, discovery has not commenced in this case, and any request for discovery, including documents and video footage, is premature. Additionally, Defendants have responded stating that Pinckneyville has been contacted and the video footage of the walk between the health care unit and R-3 B-wing for the requested time and date has been retained. Video footage of the other areas requested by Plaintiff does not exist. (Doc. 32). For these reasons, the motion is denied.

IV.     **Motion for Copies (Doc. 33)**

Plaintiff believes that there is "foul play," and his mail is being mishandled. He asks the Court to send him copies of all documents filed by Defendants and copies of all documents he has filed in order to prove his suspicions.

The motion is denied. The Court will send Plaintiff copies of any document on the docket only after receiving prepayment of the required fee (i.e., $.50 per page). Plaintiff is advised that pursuant to General Order No: 18-0014, Defendants mail to the prisoner, via the United States Postal service, a copy of any document they file with the Court. Library staff will print the corresponding Notice of Electronic Filing ("NEF") for documents filed by Defendants but will not print the full document. Due to circumstances outside the Court's control, mail sent by the United States Postal Service often takes longer to deliver than expected and can be delayed. Thus, Plaintiff can expect to receive Defendants' filings days after it has been filed with the Court. The Clerk of Court is **DIRECTED** to send Plaintiff a copy of the docket sheet.

**IT IS SO ORDERED.**

**DATED: August 28, 2024**

    *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**